Opinion of Ford, J.
The plaintiff alleges that being sheriff of the county of *Monmouth, he levied an execution on the goods and [*219 chattels of one Samuel P. Wyckoff, and that the defendants entering afterwards on the premises where the goods and «chattels were left, took them away and converted them to *260 their own use. The levy and return of the execution, in-consequence of the loss of the writ itself, were proved at the-trial of the cause from the sealing docket in these' words : “ January 26th, 1824, levied on the goods and chattels, lands and tenements of the' defendant, subject to incumbrance, to the value of $5, which remains in my hands unsold, by order of the plaintiff.” There was no evidence of the sheriff’s calling on the debtor, or making the execution known to him, or of taking the goods into his possession, or seeing them ; on the contrary, the sheriff never was on the premises until four months after the return of his execution, when the defendants seized the goods on the premises as a distress for rent which they claimed in the following manner. Their father, Samuel P. Wyckoff, on the 1st April, 1812, had conveyed the farm whereon he lived to his three children, Peter PL.Wyckoff, Joseph EL Wyckoff and Lydia Wyckoff, now the. wife of Moses Ivins, by a deed duly acknowledged and recorded. The consideration appearing on the face of the deed was $31,443.93, and this was in part payment of a debt of $48,000, which he' owed for money belonging to them, which he had received from the estate of Joseph Holmes, their deceased uncle, while they were minors, and the balance was still owing to them. He had paid rent two or three years to his children for ■ the farm, which was well worth $1,000 a year, and he admitted that he owed them $1,000 for the last year's rent. On the 13th May, 1824, they entered and distrained all the goods on the premises for the last year’s rent, and had them duly inventoried and appraised at $1,529. The sheriff coming there at the time of distraining, or soon after, applied for a copy of their inventory, which, after some shew of reluctance, was granted. He then demanded the goods of the defendants,, who, after a positive refusal, went on and sold to the amount of rent and expenses, and surrendered to him the remain.der of the goods. The jury found a verdict for the sheriff to the amount of $-. The defendants moved for a *261 new trial on two grounds; and having partly opened their argument, the plaintiff produced the fi. fa. itself, (which liad been found since the trial) and the levy endorsed *thereon was in the following words, to wit: “ Janu- [*220 ary 5th, 1824, levied, as per inventory annexed, to the value •of one dollar, which remain unsold for want of buyers.” The inventory annexed was as follows, to wit: “ 1 sorrel •stud horse; 12 horses and colts; 20 sheep; 30 horned cattle; 40 hogs and shoats; corn in cribs; hay; rye in •stack; green grain growing; 4 wagons; several sets of harness; sleigh and sled; one carriage and harness; a variety of household and kitchen furniture; together with the residue of his personal estate in the county of Monmouth. January 5th, 1824.”
First. The first reason offered for a new trial was, that •the sheriff had no right to the goods, because he never levied on them. The opinions respecting what shall, or shall not, amount to a levy in New Jersey, are so various and conflicting, that this point was reserved for deliberate argument and settlement at the bar.
An officer, at the common law, must take goods into possession, to acquire a property in them. A practical .author remarks, “ By this writ, the sheriff has authority to ■seize everything that is a chattel belonging to the defendant; by which seizure lie has such a property in the goods that he may maintain trespass or trover.” Tidd’s Pr. 917, -924. Another practical author is to the same effect. “ The officer enters on the premises in which the defendant’s goods are, and leaves one of his assistants in possession.” 1 Archb. Pr. 293. Clerk v. Withers, 2 Ld. Pay. 1073. The books speaks generally of a taking or seizure. 3 PI. Com. 417. In the case of Hotchkiss v. Me Vicker, 12 Johns. 403, the court held that a sheriff cannot maintain trover for the •goods of a debtor before seizure; that the delivery of the writ does not divest the debtor of his property till seizure. 2 John. Ch. Rep. 312. There may, however, be a good *262 and legal seizure by construction, where the officer neither touches the goods, nor sees them. Thus in Cole v. Davis, 1 Ld. Raym. 725, it was holden, that “ a seizure of part of’ the goods in a house in the name of all, was a good seizure of all.” And there is no doubt but an officer may acquire a property in the debtor’s goods against whom he receives an execution, by a mere constructive seizure, even on common, law principles; though he will not acquire it in any case merely by force of the writ itself, if he does nothing under' *221] it before *the return. There are several decisions in this court where the principle of a constructive seizure is carried to its utmost length, owing perhaps in some measure to the provisions of an act passed in 1796, Rev. Laws 241, sec. 22, “ That if any sheriff, where the execution shall be by fieri facias, shall neglect to file a just and true inventory of the goods and chattels taken in execution, he shall be-amerced in the value of the debt or damages, and costs, to* and for the use of the plaintiff or plaintiffs.” The leading, case in favor of such constructive seizure was that of Casher v. Peterson, 1 South. 317. A constable levied on a debtor’s goods and left them in his possession. The court considered the debtor an agent holding possession for the officer, who thereby acquired a property in the goods. The mode of levy in this case was probably by taking an inventory. In accordance with this case followed that of Neioell v. Sibley,. 1 South. 381. The sheriff called on the debtor with am execution, but finding him very sick, said nothing to him about it, but returned it levied on certain wood of the defendant lying at Tice’s landing. Except the inventory, there was no evidence that ever he saw or had possession of the wood ; yet the court adjudged him to have a property in it by force of the inventory or levy. The next case of Cliver v. Applegate, 2 South. 480, wrns still stronger. The constable did not go to the house of the debtor to make a levy, but seeing him from home, received from him a list of eertain goods, which he left in the debtor’s possession. It *263 was holden that the property was vested in the constable; and that the mere fact of seeing the goods could add nothing to his rights. Here was no actual seizure, no view, no possession of the goods other than the implied agency before mentioned, nothing but the mere act of taking an inventory by virtue of the execution. An idea was flung out of not even an inventory being necessary, by laying hold of an expression of one of the j udges in this case, who said, it was the possession of the writ which confers the property ; but by this he only meant that no right could be acquired in the debtor’s goods without having a writ, not that having an execution of itself, without seizure, inventory, or doing any thing by virtue of it, would vest in the officer all the goods of the debtor in the county, known and unknown, wheresoever scattered, and in whose hands soever they might be found. In the case of Wintermute v. Hankinson, 1 Halst. 140, it was expressly decided, *“that the mere [*222 delivery of the writ gives the officer no right to maintain trover for the goods.” The same thing was held by Lord Hardwicke in 2 Eq. Cas. ab. 381, pl. 14, and in Hendricks v. Robinson, 2 Johns. Ch. Rep. 312. The last case in this court is that just mentioned of Wintermute v. Hankinson, 1 Halst. 140. A constable attempting to levy an execution on the debtor’s mare, was prevented by his driving her away. Afterward the constable brought an action of trover for the property; and the court held that he had no possession of the mare, either actual or constructive. C. J. Kirkpatrick said, “ he .must make an inventory, and then only is he considered as taking possession of the defendant’s goods.” Thus it appears to be a well established principle in this court, that if an officer receiving an execution, makes in virtue of it a just and true inventory of the debtor’s goods, and files it at the return of the writ, it amounts to a constructive seizure and possession of such goods, whereby they become appropriated to the satisfaction of such execution, and the officer acquires the property so as to maintain tres *264 •pass or trover against any person taking it away. I am satisfied that this constructive seizure growing out of our statute, has been properly founded upon it; and that no inconvenience can result from it to any body. Certainly none is done to the judgment creditor, to whom the officer becomes answerable for a sum of money equal to the value •of every article, though it should be consumed, wasted, lost •or embezzled; and it would be unjust if he could not protect himself against its being wrongfully taken from him. See Clerk v. Withers, 6 Mod. 292; 2 Lord Ray. 1072; 2 Saund. 47. Neither can it be injurious to the debtor, who ■may have the comfort and accommodation of the goods till the time of sale, if the officer is willing to trust them to him ■either with or without security. And surely it is no injury to other creditors who after the return of specific articles on the first execution may seize any other goods not specified, therein, belonging to the debtor. The officer has time for making and filing such inventory from the day of receiving the writ until the day when it is returnable, but no longer ; for after the return day is past he cannot seize any other goods by virtue of that writ. The utmost length of time the law allows for executing a writ is the day whereon it is returnable, and not afterwards. Perkins v. Woolaston, 1 Salk. 321. If the seizure of goods under the first writ prove *223] insufficient to satisfy the whole sum, the creditor must sue out a new fi. fa. for, the residue, which -writ would be wholly superfluous if the sheriff could seize more goods •under the old one. Vail v. Lewis, 4 Johns. 450; Slingerland v. Swart, 13 Johns. 255. Nor is this at all inconsistent with the statute of frauds, which provides that the goods of a debtor shall not become bound but from the delivery of the writ to the sheriff; for that means no more than that the officer may seize the goods notwithstanding an alienation, not that he must_ do it; and until he does seize them the property remains in the debtor and not in the officer. 2 Eq. Ca. ab. 381, pl. 14; 2 Johns. Ch. Rep. 312; 1 Arch. Pr. 285.
*265 Let us now apply these principles to the case in question. The defendants being lawful owners of a farm, had received rent therefor two or three years of their father the tenant. That this rent was a definite sum, appears by the confession of the tenant that he owed $1,000 for the last year’s rent. This being sufficient evidence between the parties, must be so in respect of third persons unless it was fraudulent, of which there is no evidence; and consequently they had a lawful right to distrain the premises for such rent, unless the goods were in the custody of the law, which they certainly were if the sheriff had made and filed an'inventory of them under his execution prior to or on the day of its -return. Now the only evidence shewn to the jury of a -seizure of the goods on execution was the entry in the .sealing docket, “levied on the goods and chattels of the defendant to the value of five dollars.” This does not specify one item for which the judgment creditor could recover value in case it was lost, consumed, embezzled or wasted; it is no evidence for the debtor of what goods were taken away, nor to other creditors of what goods were left for them. This is a secret locked up in the breast of the officer, to make of it more or less, or twist it about like a nose of wax, to answer emergencies. It is not that inventory which, in the decisions of the court (conformably, to the -meaning of the statute), lias been recognized and established as a constructive seizure. They have allowed great efficacy to such an inventory as the statute requires to be made; they have allowed it to avail an officer as much as actual seizure would avail him; but if he does not comply with the statute he must shew an actual seizure and actual possession just as much as before the act was passed or these decisions made. The statute *requires “ a just and [*224 .true inventory ” for these are its words; that is, a list of the individual articles. So it was decided in the case of Watson v. Hoel, Coxe's Sep. 136; the sheriff having specified one or two .articles,, .added “ and upon all the household prop *266 erty;”and the court amerced him in the debt and costs, declaring this to be no inventory within the moaning of the act. Though this statute was made primarily for the benefit of the plaintiff in execution, its benefits extendi to everybody. It is beneficial to the debtor, it is beneficial to-other creditors, and the court have made it singularly beneficial to the sheriff by vesting the property of the debtor'in-him upon a simple inventory, by which he may pursue it into the hands of third persons without the necessity of actual seizure or actual possession, provided he complies-with the act. But not complying, as he has entirely failed to do in this case, he was bound to shew an actual seizure or possession of the goods, and the previous decisions of the-court neither do nor ought to apply to the case. It stands on the same ground as that of Wintermute v. Hankinson, where the officer neither actually seized, the property nor made an inventory of it. I am of opinion the sealing docket-was not sufficient evidence for the jury to find a verdict for the plaintiff, and that there ought to be a new trial.
But why resort to a new trial since the execution being' now found is laid before the court with an inventory annexed to it? It is that a jury may decide whether this-inventory was made at the time of returning the writ, or whether it has been annexed to it since that time. But-suppose it to have been made and annexed at the proper' time, it vests no goods in the sheriff but such as are specified; andas no article oí household or kitchen furniture is - specified, it follows that none of either kind was vested in him. I am- of opinion, therefore, that the rule for a new' tria-l be made absolute. This opinion is limited to the case-of a sheriff seeking to recover the value of the property from-another person. When the rights of a bona fide purchaser of the goods under his sale comes before the court, it will receive a distinct consideration how far he is to be affected. by an irregularity in the levy of which he had no notice-
*267 Opinion of Drake, J.
There was a trial of this cause at the Monmouth Circuit, and a verdict in’favor of the plaintiff.
*The plaintiff was sheriff of the county of Mon- [*225 mouth, and prosecuted this action against the defendants for the unlawful conversion of certain goods and chattels, once the property of one Samuel P. Wyckoff; against whom, a judgment for a'large amount, had been entered up in the^ Inferior Court of Common Pleas of that county, in favor of one Garret Wyckoff; and a writ of fieri facias issued thereon, returnable to the ensuing term of the said court, to wit, the fourth Tuesday of the same month of January, had been delivered to the plaintiff, then sheriff as aforesaid, to execute. Upon the trial, the original writ of execution was not to be found. The plaintiff then produced the sealing docket of the said comity court, and read from it a statement of the said wi it, with this addition, “January 26th, 1824, levied on the goods and chattels, lands and tenements of the defendant, subject to incumbrances, to the value of $5, which remains in my hands, unsold, by order of the plaintiff. B. Lloyd, Sheriff.” There was some other evidence of a levy made by the plaintiff. But as I shall found my opinion upon the charge given to the jury, at the circuit,. I do not conceive it necessary to examine that evidence, or proper to intimate my opinion of its weight.
In May, 1824, the sheriff demanded the goods of the-defendants, who had seized them as landlords of Samuel P. Wyckoffj to satisfy to them the sum of $1,000, for one year’s rent alleged to be due to them for the' premises on which said Wyckoff lived, and where the property then was. The defendants refused to deliver the goods, and proceeded to appraise and sell them, to satisfy their claim.
On the trial, it was insisted, that the mere delivery of the writ of fieri facias to the sheriff vested in him such a property in the defendant’s goods, as enabled him to maintain the action of trover for them. The jury were charged, *268 that it did not; but that an actual levy was necessary. And upon looking into the case, with all the advantages off the very able argument at bar, I continue to entertain the same •opinion. It is admitted that a general or special property in goods is necessary in order to maintain this action. Does the mere delivery of the writ vest that special property, or must there be also a levy, for this purpose ? The goods are said •to be bound from the delivery of the writ. But how bound f Not so as to make a levy unnecessary; but so as to enable the *226] sheriff, *at any time before the return of the writ, to levy on so much of them as shall be requisite to satisfy the amount of it. By the receipt of the writ, the goods become so far bound as to enable him, by proper diligence, to acquire a special property ; but it is the service of the writ, by which that special property becomes vested in him. By the com.mon law the goods were bound from the teste. By the -statute 29th Charles 2d, ch. 3, s. 16, transferred into Rev. Laws, p. 431, sec. 3, that binding, (as far as respects the interests of bona fide purchasers) is delayed until the actual -delivery of the writ to the officer. But “ neither before this -statute, nor since, is the property of the goods altered, but continues in the defendant until the execution is executed.” 2 Bacon's abr. p. 733; 4 East. 538. And this lien will continue only until the return of the writ. 1st Backus, sheriff, 266; 1st Sailed. 321; 2d Caines, 243; 4th Johnson, 250. The sheriff must make his levy, if he would secure the goods. Pie should make one that is not extravagant or oppressive, and after the return of the writ the goods not levied, on are free. ' If the levy upon the first writ be insufficient, after its return, an alias may be issued and a new levy made under that. This doctrine is well established, not only in England, but in most of our sister states. 13 Johnson, ,503; 2 Mass. 514; 2 Phi. Ev. 118, note a.
. Nor has it been settled otherwise in New Jersey. The only case which I have been able to find, that countenances a contrary doctrine, is that of Cliver v. Applegate, 2 South. *269 480, in which ono of the justices intimates a different opinion. Another expresses enough to shew that he did not unite in that opinion; and the case was decided on another point. The other cases cited on the argument, and which will be hereafter noticed, rather confirm than oppose this doctrine. And why should the officer have a right of property previous to an actual levy? The plaintiff.can look to him-only, to account for the goods levied on, or for negligence, or other official misconduct. His whole authority and interest lie in his writ. That commands him to levy, not to sue. If he cannot levy he is not accountable to the-plaintiff. Why then should he recover by action ? The injury of preventing a levy is against the plaintiff, and he-alone is entitled to sue for it. Lawrence v. Jones, 2 South. 825.
But if a levy be necessary to enable the sheriff to maintain the action of trover, the question which next arose at the circuit, and *the important one in this case, is, what [*227 constitutes a levy ? The j ury were charged that the law on this subject appeared not to be well settled in New Jersey ; that the Supreme Court had in several instances manifested' an inclination to relax the strictness of the English rules; that it was desirable to have the question settled at bar ; and they were directed-, that many acts, short of an actual seizure of the goods or removal of them from the premises, might be sufficient. And, among others, “ that, without going to the premises, or seeing the defendant, if, with the view to the service of the writ, the sheriff procured an inventory of the property, it was sufficient.” This charge is complained of, and it appears to be incumbent on the-court, at bar, to express an explicit opinion on a subject of such general interest, not only for the decision of this cause, but for the future government of officers in the execution of final process.
The phrase to levy bears different significations according to its object. To levy war is to make war. To levy money> *270 ■is to exact it. And although its application to the first part of the execution of a writ of fieri facias may be comparatively modern, yet the expression “ to levy on goods .and chattels,” is one that has been long used in the English .law books, and in those of our neighboring states; and wherever found, it means to do the act, or acts, by which a .sheriff sets apart and appropriates, for the purpose of satisfying the command of his writ, a part or the whole of the ■defendant’s goods and chattels. The usual mode of levying in England, is by seizing the goods, or, when collected into one place, by seizing part in the name of the whole. Tidd’s Practice 924. But actual touch is not necessary. It'is enough if the officer, at the time of levying, have them in his presence and under his peaceable control. Even the body may be arrested without actual touch, provided the defendant, by some unequivocal act, submits to the arrest, and puts himself at the disposal of the officer, Cowper 65. Nor is the removal of the goods, even there, necessary to the perfection of the levy, although the goods remaining in the possession of the defendant may be deemed fraudulent .as against subsequent executions.
This question has undergone more discussion in the neighboring states than in this ; and I shall notice some of their .leading decisions on the subject. In the case of Haggerty *228] and Nobles v. Wilbur *& Barnet, 16 Johnson’s (New York) Reports, 287, the question was between execution creditors. The first executions were levied by the sheriff, “ by going to the store, and seizing some articles lying outside of it, and proclaiming that he levied on the store, and the goods in it; but the store was not broken open, nor entered by the sheriff, nor was any inventory of-the property taken.” The question was, whether this was a sufficient levy upon the goods in the store house. Spencer, Chief Justice, delivered the opinion of the court. That the sheriff is bound, whilst the writ “ is in force, that is, before the return day, to make an actual levy on the goods, by taking *271 au inventory of them. An inventory is, perhaps, not necessary in all cases.'” “ The inventory furnishes the means of ascertaining what goods are levied on. It may be safely laid down that the -sheriff must have the goods under his view, and within his power to constitute a good levy. A proclamation of a levy of goods locked up, and not within the view of the sheriff, is.no levy.” “The consequence is, that there was no levy under the first executions.”
In 1 Munford’s (Virginia) Reports, p. 69, is the, case of Bullit’s Executors v. Winston. The sheriff went to the house of the defendant, with the executions, for the purpose of levying the same, on liis property. He, there, saw certain slaves, belonging to the defendant, and declared that he should levy the said writs on them. No opposition was ■made. The defendant and a security orally undertook to see that the said slaves were forthcoming at the day of sale. The sheriff did not remove them, nor touch them, but assented to their remaining with the defendant, having taken a list of their names. This levy was objected to, because the sheriff did not actually touch the slaves, and because his proclamation was not of a present levy, but that he slbould levy. It was, however, held sufficient. Judge Tucker says, “ When the sheriff had declared his intention to levy the executions on the slaves in his view; when no opposition was made to his levying the executions on those slaves ; (whether near, or at a distance, does not appear, and therefore I shall presume they wore in his presence ;) when he had taken a list of their names;” and when Winston (the defendant) and another person “ had undertaken to produce the slaves on the day of sale ; can there be a doubt, that it was unnecessary to touch them, in order to .give effect to the levy.”
*In Bay’s (South Carolina) Reports, p. 319, is the [*229 case of The Administrators of Huger v. Osborne. The court say, that “ an indorsement on the back of the execution of a levy on residue after paying off prior executions, is *272 no levy at all. It may be ten times as much as the debt-due, or it may be nothing; or it may be casting a net overall the defendant has in the world. It is too vague and uncertain to be warranted in law.” “The sheriff could not-maintain any action on such a levy if the- goods were taken away, or sold to a third person. A list or schedule of the-property actually levied on by name and description ought, .to be annexed to, or entered on the back of, the execution, and signed by the sheriff, or his lawful deputy, in order that the property may be identified, if necessary. By virtue of the levy, or seizure, the goods are vested in the sheriff, so-that he can maintain trover, or trespass, for them. But. how is it possible he can support an action unless the goods are particularly enumerated. And although they remain, in the defendant’s hands after levy, yet they are supposed to-be in the sheriff’s 'custody; for the defendant is, as the-agent of the sheriff, after a levy made.” “ A great inconvenience that would attend this indefinite levy would be,, that a defendant never could sell any part of his property whilst an execution was unsatisfied, for fear the property so-sold might be taken as part of the property levied on. Purchasers too, would be unsafe, as there could be no telling what part of a defendant’s property was 'seized, and what part clear.” “The return ought to express with precision-everything levied on.” Such a return would be “ prima facieevidence of the property seized and levied on.”
In the case of Barnes v. Billington, 1 Washington's Circuit Court Reports, p. 38, Judge Washington, after deciding: that there must be a removal, or a depriving of the defendant of the custody of the goods, in order to make the levy efficient as against a subsequent execution, (which doctrine,, as applicable to New Jersey, I do not wish to be considered as adopting) proceeds to say, “ There is another objection to the title of Billington, &c., under the execution, and that is, the insufficiency of the levy. The sheriff must always-designate the property seized under the execution, either in *273 the body of his return, or by a reference to a schedule accompanying it. The reason is obvious. The execution creating a lien, it should be known to others who [*230 may take posterior executions, or who may deal with the debtor, what property is affected by the lion, and what not.”
But notwithstanding these decisions, and similar ones to be found in the books of reports of most of the states in the Union, the counsel for the plaintiff insist that the course of legislation and practice in New Jersey, shew that the law is here different. All the statutes supposed to affect this subject have been industriously collected, and ingeniously commented on, bat without convincing me, that the legislature have intended to relax the rules applicable to it. An argument is drawn from the change of the word seize, used in the early acts, to the word levy, in the modern. Passing over prior acts, which contain nothing important on this point, the first I shall notice is one passed in 174.3. 1st. Nevill 279, sec. 3. This act directs the sheriff “ to seize and take so much of the personal estate of the defendant as may be sufficient to satisfy,” &c. In 1748, (1st Nevill 391) an act was passed establishing courts for the trial of small causes, the seventh section of which directs the constable “ to levy the debt or demand, and costs, on the goods and chattels,” &c., of the defendant. The word levy is here introduced, but its meaning is made evident by a subsequent clause in the same section — •“ which said constable, after his taking such goods and chattels into his custody by virtue of such execution,” shall proceed, &c. Precisely the same expressions are used in the act passed in 1775, Allinsons Laws, p. 471. In the act passed in 1784, (Pamphlet Laws,p. 80,) 16th and 18th sections, the expressions to levy on, and to seize and take, are used indiscriminately. In the act passed 15th March, 1798, sec. 25, (Patersons Laws 317) the justice is directed to issue an execution commanding the constable “ to levy and make the debt or damages, and costs of the goods and chattels of the defendant.” &c. *274 Previous to this, on the 29th of November, 1788, (Pamphlet Laws, p. 498) was passed the “ aet more effectually to secure the faithful execution of the office of sheriff,” the 9th section of which enacts, that if “ any sheriff, or coroner, where the execution shall be by fieri facias, shall neglect to file a just and true inventory of the goods and chattels, lands and tenements so taken in execution (unless such sheriff or officer shall return that he hath levied to the full value of the debt and costs) he shall and may *231] *be amerced,” &c. This section is copied in Paterson, 205, and Rev. Laws, p. 241, sec. 22. It is said, that this is the first introduction of an inventory, and gave rise to the disuse of actual seizure; and that Judge Paterson has framed the 25th section of the act of 1798, in correspondence with this change in the mode of levying. But •this conclusion does.not appear to be well supported. In the next section of this act of 1798, the constable who “ levies on any goods,” &c., is directed to advertise the sale of the goods and chattels so taken. The truth is, Judge Paterson, so far from conforming to any new doctrine of levy introduced by the act of 1798, has used the language of the •common law writ of fieri facias, merely substituting the active for the passive voice, and has, no doubt, adopted this phraseology, not to introduce, or conform to, any change, but because he considered its meaning to be long and well settled. Besides, is it true that the act of 1798, is the first introduction of the inventory; or even of the practice of filing it ? The language of the act, “ shall neglect to file,” &c., does not prescribe it as a neto duty; but, by imposing a penalty for the omission of what was practiced in some instances, and considered highly salutary, insures the more faithful execution of the office. That it was practiced long before the year 1788, is discovered by the inspection of the minutes of this court; but the practice was by no means universal, and by sheriffs of some counties, it was entirely neglected.
*275 But whatever may have been the origin of the practice of filing the inventory, that of making one, necessarily resulted from the multitude of writs of fieri facias, and great variety of property seized, or levied on, for their satisfaction. How was the officer to know what he had done, without having made an inventory ? But, the propriety of the practice is too obvious to require argument; and its necessity, especially in this country, where it has been usual to leave the goods in the possession of the defendant, is so imperative as to amount to proof of its existence. It has been customary in England, where the removal of the goods has been more common, but by no means universal. In Richardson’s Practice of the Court of Common Pleas, p. 26, it is said, that “ every under sheriff ought, upon reasonable notice, to deliver a true copy of the inventory of any goods taken by him upon fi. fa., &c., to the party requiring the same, he paying,” &c. This was *written long ago, and evi- [*232 dently supposes, not only that it is in the power of the officer to make and furnish an inventory, but also, that there is one already made.
Several sections of the small cause act of 1818 (Rev. Laws 629), were also referred to by counsel. The use of the words " levy on, attach, or take into his possession,” in the 26 th section, was noticed, as shewing that levying and taking into possession were different things. So they may be. But if they were synonymous, tautology in legislation is no uncommon occurrence. But, in the same section, the words “ so seized ” are used as co-extensive with and embracing all cases of levying, or taking into possession. The same subject is continued in the next section, which uses the language “ taken or seized.” The 29th section confines the operation of the writ, making it a perfect nullity as to any official proceeding under it after one year, but it gives no additional directions as to the levying of the writ, either in mode or time.
The 30th section provides for the case of an officer, who holds an execution against a defendant, upon whose goods *276 another officer has already made a levy. It gives him a lien,, subject to the prior one, upon his doing all, which the nature of the case permits, to execute his writ. And there is no doubt, it also contemplates, as several other acts of our legislature do, that practice, which is almost universal in New Jersey, of leaving the goods, after the levy, in the-possession and under the care of the defendant.
The 31st section takes away (if it ever existed) from an execution issuing out of a justice’s court, all lien previous to-the levy, and directs an inventory to be taken of “ so much of the property of the defendant as he intends to levy on,, which inventory and levy,” &c. There is some obscurity in this section. But, it cannot be that the words “ intends to levy on ” refer to a future time. This would be absurd. And all the subsequent directions, of the section, shew that the levy and taking of the inventory are simultaneous acts. Or rather,-the taking of the inventory, under proper circumstances and with the view to the execution of the writ, may constitute the levy. The statute makes the inventory essentialr but it does not mean to dispense with any other act, or circumstance. When the constable prefixes or adds to it such words as shew that he has made a levy, by virtue of the writ, *233] upon the *goods there inventoriod, and the actual time of making the same, and signs it, and annexes it to the execution, it “ shall at all times be received as evidence of the levy, and of the time of making the same,” even before the return of tile writ. But this evidence will only be prima, facie; and if the inventory and levy were not taken under proper circumstances they will be void. The legislature never intended to destroy the wholesome requirements of the laws on the subject of levies in justice’s courts, more than any other. And when they attach so much importance to the inventory, they mean that the officer should make it with all those means of knowledge which are necessary to enable him to make it correctly.
I have thus noticed the several acts of the legislature cited by counsel on the argument of this question, and it *277 appears to me that they do not evince any intention in the legislature to relax the rules which govern the duty of levying a writ of fieri facias, even in justices’ courts, and much less, to make a change in the mode of levying, since the year 1788, extending to all courts and officers.
There have not been many cases before the Supreme Court of this state connected with this subject. The first, which I have noticed, is that of Casher v. Peterson, 1 South. Rep. 317. The Chief Justice, who delivered the opinion of the court, says, “ There can bo no doubt but that a constable having levied upon goods, has such a property in them as will maintain either trespass or trover. In this country it has not been the custom nor is it necessary that the goods should be actually removed by the officer. They are loft in the hands of the defendant, at his request, and for his benefit and accommodation, and he must be considered as the agent, and his house as the store-house of the officer, for this purpose. If the execution should not be pursued, and a subsequent one be levied on the same property, then it will always be a question whether the first was kept up merely by color and for fraudulent purposes.” The case of Newell v. Sibley, 1 South. 382, was an action brought by the plaintiff for a quantity of wood, which had been the property of one Dayton Howell. The defendant was sheriff, and sold the property by virtue of two executions in his hands against Howell. A levy was indorsed on the executions as having been made on the 10th day of February, 1814. The case *does ['*234 not set out what was the evidence of the levy, further than the return of the sheriff, and that he called at Howell’s house, but “ finding him sick, said nothing to him about the executions,” - The plaintiff claimed as purchaser at a private sale made to him by Howell, on the 12th February. The fact of a levy, at some time before the return of the writ, does not appear to have been disputed. The judge charged the jury " that the wood was bound from the time of delivering the execution to the sheriff; and that any subsequent sale by *278 Howell was void, though without notice, and prior to the levy.” The jury found a verdict in conformity with this view of the law; and this court considered that there was no good reason to set that verdict aside.
The next case is that of Cliver v. Applegate, 2 South. 480 ; in which one of the justices says, “ it has more than once been decided that an officer need not remove the goods, but may make the defendant his store-keeper at his own responsibility. It is also true, that the mere fact of seeing the goods when he makes the levy, can add nothing to his rights or his responsibilities.” “ The goods are bound from the receipt of the writ, and the officer, for his own safety, ought speedily to see and inventory them, and take the necessary measures for their safe keeping. But if he neglect this, it gives a subsequent writ in the hands of another officer no preference.” The case, however, as already stated, was not decided on this ground.
The above doctrines evidently did not all meet the approbation of the Chief Justice; and in the subsequent case of Wintermute v. Hankinson, he says, “ The mere delivery of the writ to the constable gives him no.right to maintain trover. He must make an inventory, and then only is he considered as taking possession of the goods of the defend- . ant; and if they are not actually taken away by the constable, they are considered as bailed to the defendant for safe keeping.” This case might have been considered as putting at rest the adverse dicta of the preceding one, but that it may have been decided with a particular reference to the provisions of the 31st section of the small cause act, herein before noticed.
Upon these authorities, I would observe, in the first place, that they all concur in considering the removal of the goods unnecessary to the perfection of the levy. Although upon *236] a question of * fraud, raised in favor of a subsequent execution, it is important to the sheriff, or plaintiff in the prior one, that he should not have left the property in this *279 situation, too long, especially if subject to rapid diminution of value; and by all means, not knowingly to suffer a use to be made of it inconsistent with the proper purposes for which it was levied on.
And secondly, that a levy may bo made without the knowledge of the defendant. It may be impossible to give him notice, or it may be inexpedient, as in the case of Newell v. Sibley. But the controversy in that case shews that it is desirable, although not essential, that the fact of levy should be communicated to the defendant. But the question recurs, What is necessary to a levy ? As I believe the legislature never intended to make any change in the law relative to levies, so as to diminish their certainty or publicity, so I regard these qualities too important to the interests of justice to adjudge them away in comformity to any loose or doubtful practice. Where the officer has proceeded to sell by virtue of an imperfect levy, to a bona fide purchaser, the acquiescence of the defendant not only stops his mouth, but gives additional proof of the identity of the property levied on; and to protect such sales, even against third persons, I am disposed to yield to the usages which have crept in. But I would not encourage the remissness of the sheriff by giving him an action upon such a levy, or give efficacy to it, on a question of priority. The duty of the sheriff to the plaintiff, requires that he should make a sufficient levy; and his duty to the defendant, as strongly requires that ho should not make an oppressive levy. lie ought then, for both these purposes, to have the means of knowing the value of the goods he levies on. He must make the money of the goods and chattels levied on, and must have them to shew to purchasers at the sale, and to deliver, when sold ; for the law does not justify a sale where bidders have not the power to discover the value, or of personal property susceptible of delivery, where they cannot depend upon receiving the property into their possession without controversy. For these purposes, the sheriff should have the *280 property under his control. The sheriff should knoiu exactly what he has levied on, and be able to furnish information to parties interested. Eor this purpose, whenever the sheriff does not take and keep the goods and chattels *236] levied on *in his immediate possession, he should take a true list or inventory of them.
Erom what has been said, the requisites to a good levy, in all ordinary cases, may be safely laid down to be,
1st. That the officer should see the goods, and have them in his power. And
2ndly. That he should, in addition to this, do some act, demonstrating his intention, from that time forward, to appropriate them in obedience to the commands of his writ.
It is impossible to describe what these acts, under all circumstances should be. Some, however, may be mentioned. As, actual seizure of the goods, or seizure of part, in the name of the whole then present; or a public declaration plainly designating the property levied on; or, the taking of an inventory. I do not consider an inventory to be required by the act of 1788, or dispensed with in a particular case, for any other purposes than those mentioned in the act. It is made neeessary by the 31st section of the small cause act, in the execution of writs from justices courts. It is to be recommended in all cases. And I deem it essential to the perfection of the levy, if the goods he left with the defendant. It appears to me that there Í3 no difference in the different courts as to the circumstances under which the levy should be made, further than may arise out of the 30th section of the small cause act. The making of an inventory through the information of others, or receiving one from the defendant, is not of itself a sufficient levying. The mechanical labor may, no doubt, be done by any person the sheriff sees proper to employ, even the defendant in execution ; but the sheriff, if he receive such an inventory, has not yet got a levy. He must see the property, and have it under his control, and know what he has thus actually, or constructively, taken, in *281 order to perfect his levy. An inventory taken without competent knowledge, is liable to almost all the objections against a general levy.
If the sheriff, or constable, has levied on goods by virtue of one writ, they are considered to be in his possession, and lie need not, upon a second writ, go to see them again. It will be a sufficient service of the second, to make an inventory from the knowledge already acquired. 17 John. 116.
*It results that the charge given in this case to the [*237 jury, was erroneous. And upon the whole case I am of opinion that the rule for a new trial should be made absolute.

Affirmed in the Court of Appeals, May 1830.